UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM BELT,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF RAPID CITY, MICHELLE PAULSON, WHO IS SUED IN HER OFFICIAL AND INDIVIDUAL CAPACITY;<br><br>Defendants. | 5:24-CV-05021-RAL<br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This 42 U.S.C. § 1983 action raises a claim under the Fourth Amendment. The Rapid City Police Department secured a warrant authorizing the swabbing of Plaintiff William Belt's penis for evidence that he raped a 17-year-old girl. Michelle Paulson, a former forensic examiner for Rapid City (the City), executed the search warrant by swabbing Belt's penis. Belt now sues Paulson and the City, alleging that the cross-gender nature of the search made it unreasonable. Because the search was reasonable under the circumstances, this Court grants Defendants' motion for summary judgment and denies Belt's motion for partial summary judgment.

I.  **Facts**

Seventeen-year-old D.L. contacted the Rapid City Police on August 17, 2021, to report that Belt had just raped her. Doc. 17-4 at 20–21, 89–91; State v. Belt, 15 N.W.3d 732, 735 (S.D. 2024); Doc. 41-1 at 4. D.L. underwent a sexual assault examination that same day while officers secured a search warrant for Belt's person and apartment. Doc. 41-1; Belt, 15 N.W.3d at 735. The affidavit

1

supporting the warrant explained that D.L. had reported the rape earlier that morning and that the police wanted to compare the evidence collected from Belt with the evidence from D.L.'s examination. Doc. 41-1 at 4. Among other things, the warrant authorized a swab of Belt's penis for "[a]ny trace evidence." Doc. 41-1 at 1.

Paulson conducted Belt's forensic examination on the afternoon of August 17. Doc. 28 ¶ 1; Doc. 39 ¶ 1; Doc. 29-1. She has a bachelor's degree in forensic science, has participated in numerous continuing education courses, and had roughly 16 years of field experience in forensic examinations in August 2021. Doc. 57 ¶¶ 1–3; Doc. 60 at ¶¶ 1–3. At the time of Belt's examination, the City did not employ any male forensic examiners because the women who applied were the most qualified applicants for the position based on education, training, and experience. Doc. 57 ¶ 5; Doc. 60 ¶ 5.

Paulson examined Belt in a room at the police station. Doc. 29-1. An officer's body camera recorded the search. Doc. 29-1. Peyton Harrison, a female intern, was present for the examination, as were two male officers. Doc. 28 ¶ 5; Doc. 39 ¶ 5; Doc. 29-1 at 7:24–16:00. Paulson provided Belt with a copy of the warrant and explained the exam to him before swabbing his mouth and hands for DNA. Doc. 29-1 at 7:28–11:30. After taking some pictures, she asked Belt to undress, collected his clothing, and photographed Belt while he was naked. Id. at 11:55–14:56. Paulson then swabbed Belt's penis and asked him to pull back his foreskin. Id. at 15:07–17; Doc. 28 ¶ 2; Doc. 39 ¶ 2. Belt complied, and Paulson briefly took his penis in her hand and swabbed under his foreskin for evidence. Doc. 29-1 at 15:15–32; Doc. 28 ¶ 3; Doc. 39 ¶ 3. Paulson wore gloves throughout the examination and held Belt's penis for less than 15 seconds. Doc. 29-1 at 15:18–31. She directed Belt to some clothes he could wear immediately after finishing the swab. Id. at 15:32–39.

Belt was indicted for second-and third-degree rape and sexual contact with a person incapable of consent. Belt, 15 N.W.3d at 736. At trial, a forensic scientist testified that D.L.'s DNA was found on the penile swabs taken from Belt. Doc. 17-5 at 114–115; see also Belt, 15 N.W.3d at 736. The jury acquitted Belt of the rape charges but convicted him of sexual contact with a person incapable of consent. Doc. 17-5 at 223.

The City changed its approach to swabbing a suspect's genitals after Belt sued in April 2024. Doc. 28 ¶¶ 13–14; Doc. 39 at ¶¶ 13–14; Doc. 57 ¶ 6; Doc. 60 ¶ 6. Christian Sigel, the Captain of the Evidence Division for the City and the City's Rule 30(b)(6) witness, testified that the City trained nonprofessional male police officers to perform forensic examinations involving full male nudity and stopped doing cross-gender forensic examinations.[1] Doc. 29-2 at 3–4, 11; Doc. 28 ¶ 13; Doc. 39 ¶ 13; Doc. 57 ¶ 6; Doc. 42 ¶ 4. Belt agrees that the City trained male officers to hold and swab a penis, but he claims there is no evidence that the City trained the officers to do any more "forensic examination" than that. Doc. 60 ¶ 6. Although the City trained these male officers, it would prefer to have certified forensic examiners do the examination to ensure the examination's credibility and validity. Doc. 57 ¶ 7; Doc. 60 ¶ 7.

The City's current certified forensic examiners are female, and they were the most qualified applicants when hired. Doc. 57 ¶ 9; Doc. 60 ¶ 9. The City is an equal opportunity employer and did not consider sex when hiring the examiners. Doc. 57 ¶ 10; Doc. 60 ¶ 10. Sigel stated in an affidavit that the City's budget does not allow it to hire a male forensic examiner just to perform forensic examinations on male suspects. Doc. 42 ¶ 5; Doc. 57 ¶ 8. Belt counters that Sigel has not shown that he is qualified to opine about the City's budget. Doc. 48 at 20; Doc. 60 ¶ 8. He

---

[1] Belt points out that the City performed two more cross-gender forensic examinations after his April 9, 2024 complaint. Doc. 28 ¶ 14; Doc. 29-3 at 11. The City counters that it needed time to train male nonprofessionals to perform the exams. Doc. 39 ¶ 14.

also argues that this case is not about forensic examinations generally but the narrow act of holding and swabbing a suspect's genitals. Doc. 48 at 20; Doc. 60 ¶ 8. He points out that the City has offered no evidence that switching to male officers to swab male suspects caused a financial burden or led to legal challenges to the evidence the officers collected. Doc. 48 at 20–21; Doc. 60 ¶¶ 7–8.

Part of Belt's Fourth Amendment claim is that the City had a custom of conducting cross-gender strip searches. Doc. 46 ¶¶ 15–19. He submitted a request for production to the City asking for "[a]ll records for the past five years documenting cross-gender strip searches conducted by any Rapid City employees." Doc. 29 ¶ 6. The City produced a list of what Belt says are 240 cross-gender strip searches it conducted from July 2019 through June 20, 2024. Id.; Doc. 29-3. The City disputes this, arguing that it does not classify forensic examinations as strip searches. Doc. 39 ¶ 6. The City also asserts that it produced 240 videos depicting a variety of examinations, many of which would not qualify as strip searches under Belt's definition. Id. The City is willing to produce these videos to the Court, although it contends "the content would be multiple terabytes." Id.

Belt moves for partial summary judgment on liability. Doc. 27. Defendants filed a cross motion for summary judgment. Doc. 53.

## II.   Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a

"reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine whether there is any genuine issue of material fact. See Fed. Ins. v. Great Am. Ins., 893 F.3d 1098, 1102 (8th Cir. 2018).

### III. Analysis

#### A. Section 1983

Section 1983 provides a cause of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Municipalities and their employees are suable "persons" under § 1983, and the employees can be sued in both their official and individual capacities like Paulson is here. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). Belt's claim against Paulson in her official capacity is treated as a claim against the City. Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). A municipality is not liable under § 1983 unless there is an unconstitutional act by one of its employees and its official

policy or custom caused the act. Monell, 436 U.S. at 694; Webb v. City of Maplewood, 889 F.3d 483, 486–87 (8th Cir. 2018).

The pleading requirements and available defenses are different for claims brought against municipal employees in their individual capacities. One big difference is that officers sued under § 1983 in their individual capacities can raise qualified immunity as a defense. This doctrine "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Partlow v. Stadler, 774 F.3d 497, 501 (8th Cir. 2014). Courts use a two-step inquiry to determine whether qualified immunity applies: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Id. Plaintiffs must meet both steps to defeat qualified immunity, and courts can begin (and perhaps end) with either step. Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015).

## B. Reasonableness of Search

The Fourth Amendment requires that searches be reasonable. This standard depends on the totality of the circumstances and cannot be precisely defined or mechanically applied. Bell v. Wolfish, 441 U.S. 520, 559 (1979). Instead, reasonableness is judged by balancing "the need for the particular search against the invasion of personal rights that the search entails." Id. Courts evaluating the reasonableness of a search like Belt underwent consider four factors: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; see Robinson v. Hawkins, 937 F.3d 1128, 1136–37 (8th Cir. 2019) (applying Bell to a claim that a strip search was unreasonable).

Although reasonableness must be analyzed on a case-by-case basis, caselaw provides some helpful guidelines:

- Searches involving nudity should be conducted in a private area if possible. See Richmond v. City of Brooklyn Ctr., 490 F.3d 1002, 1008 (8th Cir. 2007) ("[S]trip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns."); Robinson, 937 F.3d at 1137 (concluding that a jury could find a strip search unreasonable in part because it was conducted in an open-air parking lot while the plaintiff was pushed up against an oily tractor-trailer);

- Strip searches "should be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion." Richmond, 490 F.3d at 1008; see also Harris v. Miller, 818 F.3d 49, 59–60 (2d Cir. 2016) (per curiam) ("A strip search conducted in a professional manner is more reasonable than one that is not.");

- Intimate searches should not involve any more contact than is necessary. See Robinson, 937 F.3d at 1137 (concluding that a jury could find a search unreasonable in part because the officer touched the inside of the suspect's vagina during a search despite having little reason to believe the suspect had drugs inside her genitals);

- Searches involving medical procedures or something akin to one should be performed by trained professionals. See Missouri v. McNeely, 569 U.S. 141, 151 (2013) (noting that a warrantless blood draw in another case was conducted in a reasonable manner because it was performed "by a physician in a hospital environment according to accepted medical practices" (citation omitted)); Bonitz v. Fair, 804 F.2d 164, 172–73 (1st Cir. 1986) (finding that body cavity searches in prison were unreasonable in part because they were performed by police officers rather than medical personnel); and

- Strip searches "should be conducted by officials of the same sex as the individual to be searched." Richmond, 490 F.3d at 1008; see also Robinson, 937 F.3d at 1137–38 (citing Richmond and stating that strip searches "are to be conducted by an officer of the same sex as the suspect").

The reasonableness of Belt's search would be an easy question if Paulson were male. Paulson has a degree in forensic science and is a trained professional. See McNeely, 569 U.S. at

7

151; Bonitz, 804 F.2d at 172–73. She performed the search in a clean room isolated from public view. See Richmond, 490 F.3d at 1008; Robinson, 937 F.3d at 1137. She described the exam to Belt before beginning, wore rubber gloves throughout, and was courteous and professional. Ex. 29-1 at 7:29–51; see Harris, 818 F.3d at 59–60; Richmond, 490 F.3d at 1008. Although swabbing a suspect's genitals is inherently invasive, see Maryland v. King, 569 U.S. 435, 446 (2013), neither the video of the exam nor Belt himself suggests that Paulson did anything more than what was necessary. Indeed, Paulson asked Belt to retract his foreskin rather than doing it herself, only held his penis for the brief time needed to swab underneath his foreskin, and directed Belt to clothes he could wear immediately after finishing the exam. Ex. 29-1 at 15:09–15:39. The facts also justified the search; a state court judge determined that there was probable cause to believe that evidence of the rape of a 17-year-old girl would be found on Belt's body. Doc. 41-1; see United States v. Willams, 477 F.3d 974, 975 (8th Cir. 2007) (finding that search inside suspect's pants was justified where police had a warrant to search suspect's body for drugs and probable cause to believe he had drugs in his pants). Defendants had a significant interest in collecting this critical evidence to prosecute Belt. And unlike other Fourth Amendment cases before this Court, the warrant here specifically authorized a swab of the suspect's penis. Doc. 41-1; see Riis v. Shaver, 458 F. Supp. 3d 1130, 1178 (D.S.D. 2020) (holding that search warrants for suspects' "urine" did not authorize forced catheterization).

Belt argues, however, that the search was unreasonable because Paulson and Harrison are female. The Eighth Circuit in Richmond stated that as of April 2001, the "law was . . . clear that strip searches should be conducted by officials of the same sex as the individual to be searched." 490 F.3d at 1008. Richmond did not involve a strip search by members of the opposite sex, so it did not discuss whether the presence or participation of an officer of the opposite sex could be

8

appropriate in certain circumstances. Id. In 2019, the Eighth Circuit relied on Richmond for the proposition that "clearly established law holds that strip searches are to be conducted by an officer of the same sex as the suspect." Robinson, 937 F.3d at 1137–38. The Eighth Circuit in Robinson concluded that a jury could find that the search of the plaintiff was unreasonable in "both scope and manner" where a female officer with little reason to believe the plaintiff had drugs in her genitals pulled down the plaintiff's underwear while the plaintiff was pushed against an oily tractor-trailer in an open-air parking lot; touched the inside and outside of the plaintiff's vagina and anus as a male officer watched; and insulted and swore at the plaintiff throughout the search. Id. at 1137. The Eighth Circuit denied the officer qualified immunity, reasoning that Richmond made it sufficiently clear that strip searches "are to be conducted by an officer of the same sex as the suspect 'in an area as removed from public view as possible without compromising legitimate security concerns' and to 'be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion.'" Id. at 1137–38 (quoting Richmond, 490 F.3d at 1008).

As even Belt acknowledges, though, exigent circumstances can make cross-gender strip searches reasonable. See Harris, 818 F.3d at 59, 63 (recognizing that exigent or emergency circumstances could make cross-gender strip searches reasonable). Indeed, the district court in Munywe v. Peters, No. 2:21-cv-05431, 2023 WL 1965991 (W.D. Wash. Feb. 13, 2023), found that exigent circumstances justified a female forensic technician's swab of a male rape suspect's penis. Id. at *5–7. The officers in Munywe secured a warrant in the early morning hours authorizing a swab of the suspect's genitals for trace DNA evidence. Id. at *2. A male forensic technician was on duty when the warrant was issued, and when the police began questioning the suspect. Munywe v. Peters, No. 3:21-cv-05431, 2023 WL 1971732, at *9 (Jan. 9, 2023) (report and recommendation). By the time the interrogation ended, however, the female forensic technician

9

was the only technician working and a male technician would not be on duty for another five-and-a-half hours. Munywe, 2023 WL 1965991, at *2–3. The district court found that the need to swab the suspect before the evidence was destroyed and the lack of any male technicians on duty made the cross-gender swab reasonable. Id. at *6. The court also rejected the suspect's argument that a female detective's presence in the room made the swab unreasonable, explaining that the detective was part of the investigation team and did not closely watch the swab. Id. at *7. The Ninth Circuit affirmed, holding that the officers' "method of searching Munywe and the exigent circumstances necessitating his search" distinguished the suspect's case from the Fourth Amendment violation the court had found in Byrd v. Maricopa County Sheriff's Department, 629 F.3d 1135 (9th Cir. 2011) (en banc).[2] Munywe v. Peters, No. 23-35187, 2025 WL 1143247, at *1 (9th Cir. Apr. 18, 2025) (mem.).

As in Munywe, exigent circumstances justified Paulson's search of Belt. The police suspected that Belt raped a 17-year-old girl earlier that day. A state court judge found probable cause to believe that evidence of this rape in the form of trace DNA would be found on Belt's penis. Doc. 41-1. This evidence was easily disposable and in Belt's control, so Defendants needed to perform the search as soon as possible. See Doc. 29-2 at 6; Kaliku v. United States, 994 A.2d 765, 780 (D.C. 2010) (noting that DNA evidence on a suspect's penis "could easily have disappeared" given the "delicate nature" of the evidence and "the area in which it was located"). At the time of the search, however, the City employed only female forensic examiners. Doc. 57 ¶ 5; Doc. 60 ¶ 5. It was reasonable for Paulson to swab Belt under these circumstances. See

---

[2]The Ninth Circuit in Byrd held that a cross-gender strip search performed by a female prison guard in training violated the Fourth Amendment where the guard touched the prisoner's genitals and anus through very thin boxer shorts and there was no justification for having a female perform the search rather than a male. 629 F.3d at 1142–43.

10

Munywe, 2023 WL 1965991, at *6; Hill v. McKinley, 311 F.3d 899, 903 (8th Cir. 2002) (finding no Fourth Amendment violation when there were not enough female jail guards to transfer a naked, unruly female arrestee from one room to another so both male and female guards helped with the transfer).

Belt makes three arguments against finding exigent circumstances, but none are persuasive. He argues first that Sigel's testimony as the City's Rule 30(b)(6) witness precludes the City from claiming that exigent circumstances exist for his search. But Sigel's testimony must be read in context. Belt's lawyer had been questioning Sigel about whether the City considered what happened to Belt a strip search and whether the City was claiming that exigent circumstances justified the cross-gender examinations it had performed. Doc. 29-2 at 4–6. Belt's lawyer suggested that Paulson strip searched Belt while Sigel insisted that it was merely a forensic examination, and that exigent circumstance aren't required for such examinations. Id. The following exchange then occurred:

> **Belt's lawyer**: And we agree, I think, that there were no exigent circumstances for Belt?
>
> **Sigel**: I - - I don't agree or disagree. Exigent circumstances don't apply in forensic examinations and I just - - I don't know the specifics whether exigent circumstances existed. However, in these sort of investigations, evidence can dissipate rather quickly whether if it was simply friction on some clothing, washing of hands, forensic evidence can disappear, dissipate and so there is a need to process that individual as soon as possible.
>
> **Belt's lawyer**: Well, that's still not the question. The paragraph 2 - -
>
> **Sigel**: Yes, sir.
> . . . .
> **Belt's lawyer**: I'm asking, does the City claim that exigent circumstances, first of all, justify Belt's cross-gender strip search?
>
> **Defendants' lawyer**: Objection, calls for a legal conclusion. Go ahead and answer.

11

    **Sigel**: No.

Doc. 29-2 at 6. Although Belt focuses on Sigel saying "no" to this last question, Sigel's testimony as a whole shows that the City did not disclaim any argument that exigent circumstances justified Paulson's search of Belt.

    Belt argues next that Defendants cannot rely on exigent circumstances of their own making. He points out that the City knew the Eighth Circuit had prohibited cross-gender strip searches absent exigent circumstances yet failed to hire any male forensic examiners or train any males to swab male suspects' penises. Doc. 28 ¶ 8; Doc. 39 ¶ 8; Doc. 29-2 at 6. But there are significant differences between Richmond and Robinson and the search here. Richmond did not involve a cross-gender search at all, and the strip search in Robinson was a warrantless, non-urgent search performed by a police officer in an abusive and unhygienic manner with no apparent justification for searching inside the suspect's genitals and having a male officer watch. Richmond, 490 F.3d at 1008; Robinson, 937 F.3d at 1137–38. The penile swab here, in contrast, was authorized by a warrant, justified by the need to collect easily disposable evidence of a serious crime, no more intrusive than necessary, and performed by a trained forensic examiner in a hygienic and professional manner in a private room. Neither Robinson nor Richmond say anything about how far police must go to avoid cross-gender searches like what Belt underwent or when police will be deemed to have created the exigent circumstances for such searches. Saying Richmond and Robinson preclude Defendants from relying on exigent circumstances imposes a duty on police not contemplated by the Fourth Amendment.

    The Fourth Amendment requires only reasonableness, not that police departments structure their work force to avoid any possibility of cross-gender searches. See Williams, 477 F.3d at 976 ("[T]he existence of less intrusive means does not, by itself, make a search unreasonable." (cleaned

up and citation omitted)). The police department in <u>Munywe</u>, for example, hired male forensic examiners and had one working when the warrant was issued. 2023 WL 1965991, at *2–3. Neither the district court nor the Ninth Circuit said that the police should have conducted the swab while the male technician was still on duty or called one of the male technicians in to do so. <u>Id.</u> at *6; <u>Munywe</u>, 2025 WL 1143247, at *1. And the Eighth Circuit in <u>Hill</u> found no Fourth Amendment violation where male and female jail guards moved a naked, unruly female arrestee from one room to another because there were not enough female guards available for the procedure. 311 F.3d at 903. The Eighth Circuit did not suggest that the jail created these circumstances by not hiring or scheduling enough female guards to perform the transfer. <u>See id.</u> The City's failure to have a trained male officer or male forensic examiner on staff does not preclude Defendants from relying on exigent circumstances. The City is an equal opportunity employer by law, and it employed only female forensic examiners at the time of Belt's search because they were the most qualified applicants for the position. Doc. 57 ¶¶ 5, 10; Doc. 60 ¶¶ 5, 10; <u>see</u> <u>Timm v. Gunter</u>, 917 F.2d 1093, 1102 (8th Cir. 1990) (opposite sex surveillance performed on the same basis as same-sex surveillance not unreasonable where justified by safety and equal opportunity concerns).[3] These hiring decisions were reasonable, even given <u>Robinson</u> and <u>Richmond</u>.

Belt's third argument against exigent circumstances is that the male officer in the room could have held and swabbed his penis. The City, however, did not train male officers to swab a

---

[3]Belt argues that it would have been easy for Defendants to train a male officer to swab a penis. Doc. 48 at 3–4, 18–21. He contends that the City's decision to train nonprofessional male officers after the filing of this lawsuit shows that having a female do the swab was never necessary. Doc. 48 at 18. The City trained these officers, but still prefers to have presumably better-trained and credentialed forensic examiners collect such evidence. Whether exigent circumstances existed to justify the cross-gender search of Belt depends on the situation at the time the warrant was executed on August 17, 2021. At that time, the City only had female forensic examiners trained to execute the penal swab search authorized by the warrant.

male suspect's penis until after Belt filed this lawsuit. Doc. 57 ¶ 6; Doc. 60 ¶ 6. It was reasonable to have a trained forensic examiner perform the swab when there were no trained male officers at the time. Cf. Riis, 458 F. Supp. 3d at 1181–82 (finding a question of fact on whether it was reasonable for a male officer to hold a female suspect's leg while she was involuntarily catheterized when the police admitted that a female jailer was present and could have held the suspect's leg).

Belt also alleges that Harrison being in the room made the search unreasonable. Doc. 46 ¶ 10. This Court in Riis held that a female officer's presence in the room while a male suspect was catheterized did not violate the Fourth Amendment given that the officer stood back from the hospital bed and did not physically assist in the procedure. 458 F. Supp. 3d at 1182. The district court in Munywe, 2023 WL 1965991, likewise found that a female detective's mere presence during a swab of the male suspect's penis did not make the search unreasonable since the detective was part of the investigation team and moved away from the suspect to the back of the room during the search. Id. at *7. So too here. Harrison, a forensic intern, stood on the opposite side of the room from Belt during the search. Ex. 29-1 at 5:49–16:35. She did not touch Belt and appeared to avert her eyes for much of the time he was unclothed. Id. at 14:15–16:00. Harrison's presence did not violate the Fourth Amendment.

When there are no material disputes of fact, both the reasonableness of a search and the existence of exigent circumstances are questions of law. Armstrong v. Hutcheson, 80 F.4th 508, 513–14 (4th Cir. 2023); Doran v. Eckhold, 409 F.3d 958, 961 (8th Cir. 2005) (en banc). Although the parties dispute whether the search was reasonable and whether exigent circumstances existed, there are no disputes about the facts surrounding the search. Indeed, the search was recorded on an officer's body camera, leaving no genuine dispute of material fact as to what occurred in the

search. Because Paulson's swab of Belt's penis was reasonable even when viewing the facts in the light most favorable to Belt, she is entitled to summary judgment on Belt's individual capacity claim.

### C. Municipal Liability

Belt's search was reasonable, so Defendants are also entitled to summary judgment on Belt's claim against the City and Paulson in her official capacity. Webb, 889 F.3d at 486–87 (explaining that there must be an unconstitutional act by a municipal employee before a municipality can be held liable).

### D. Motion for Leave to Serve Subpoena

After the cross motions for summary judgment were fully briefed, Defendants moved for leave to serve a subpoena outside the discovery deadline. Doc. 64. Defendants seek to subpoena Belt's records from the State Penitentiary for use in cross-examination. Doc. 65. Because Defendants are entitled to summary judgment, this motion is denied as moot.

### IV. Conclusion

For the reasons stated above, it is

ORDERED that Belt's Motion for Partial Summary Judgment, Doc. 27, is denied. It is further

ORDERED that Defendants' Motion for Summary Judgment, Doc. 53, is granted. It is finally

ORDERED that Defendants' Motion for Leave of Court to Serve Subpoena, Doc. 64, is denied as moot.

DATED this 29th day of September, 2025.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE